Keniston, G. J.
This is an action of tort brought by the plaintiff against the defendants Sidney M. Goldberg and Josephine Paronich. The corporate name of the plaintiff was changed on January 11,1946, after the cause of action arose, from Goldberg & Rich Co., Inc., to Manhattan Clothing Company, Inc.
There was a finding for the plaintiff against the defendant, Sidney M. Goldberg, for $2,880. and for the defendant Josephine Paronich. This report is claimed by the defendant, Sidney M. Goldberg. The declaration alleges in substance that the defendants diverted 4,695% yards of rayon linings ordered by the plaintiff of William Skinner & Sons and shipped to the plaintiff and converted by the defendants to their own use.
The answer is a general denial.
*100 The following evidence is contained in the report and the exhibits. The plaintiff was engaged in the manufacture of men’s topcoats and overcoats in its place of business at 101 Albany Street, Boston. The defendant, Goldberg, had been for a long time and was on October 4, 1945 president and one of the directors of the plaintiff corporation and continued as such until he resigned January 4, 1946. His duties comprised sales and office management; he was the “outside man.” Fred M. Rich was treasurer and director of the corporation and acted as production manager. The defendant, Josephine Paronich, was a bookkeeper employed by the plaintiff. ,
On October 4, 1945 the plaintiff applied through the defendant Goldberg acting for and on behalf of the plaintiff to the War Production Board for a priority to purchase goods and thereafter a limited priority was granted to the plaintiff to purchase 11,225 yards of rayon linings from three specified manufacturers, of whom one was William Skinner & Sons of New York, N. Y., hereinafter referred to as Skinner. If one priority to purchase goods was granted by the War Production Board another would not be granted for the same period and the priority authority could not be assigned under the regulations of the War Production Board. Pursuant to this authority the plaintiff through the defendant Goldberg acting for the plaintiff on October 11, 1945 placed an order with Skinner for a total of 5,000 yards of rayon linings for lining men’s coats, the order bearing the order number 8281.
There were some “free” linings on the market, that is, linings which could be purchased without authority from the War Production Board but these were scarce and the plaintiff could not order or purchase any such “free” linings although it attempted to do so. Neither the plaintiff nor the defendant Goldberg was able to obtain any free *101 linings from Skinner except the 4,695% yards of linings covered by order No. 8281.
The defendant Goldberg had prior to October 4,1945 been planning to leave the defendant Corporation and form a new corporation himself and on November 6,1945 attended an organization meeting of a new corporation and on January 4, 1946 a charter was issued to the Sidney M. Goldberg Co., with an address at 9 Knapp Street, Boston, but Goldberg did some work at 72 Harrison Avenue, Boston. The defendant Goldberg continued as an officer and employee of the plaintiff corporation at its place of business at 101 Albany Street until January 4, 1946 but did some business at that address on his own account relating to advertising, letterheads and purchase of woolens.
After the order of the plaintiff had been placed with Skinner one Hughes connected with Skinner had a talle with Goldberg in which Goldberg told him that he, Goldberg, was going into the clothing business in January and asked Hughes if he could do anything personally to obtain linings for him, to which Hughes replied that he did not know, he would take it up later.
On November 20,1945 two cartons of linings covered by an invoice dated November 16, 1945 addressed to Sidney M. Goldberg & Co., 101 Albany Street, Boston, and referring to order No. 8281 were shipped from New York by Skinner via the Railway Express Agency directed to ‘ ‘ Goldberg Rich’-’ at 101 Albany Street, Boston, as shown by the delivery and shipping ticket made out by the Railway Express Agency. These cartons were delivered at the plaintiff’s place of business at 101 Albany Street on November 24, 1945 and receipted for by Josephine Paronich but were redirected to 72 Harrison Avenue, Boston, by the defendant Paronich at the defendant Goldberg’s request and without the knowledge of Rich, the treasurer of the plaintiff corpo *102 ration and were receipted for at “72 Harrison” by Maxwell Shapiro.
Subsequent shipments of linings were made by Skinner from New York on November 21, November 23, December
4, December 28 and December 29, 1945. The shipments of November 21 and 23 were directed to Sidney M. Goldberg, 101 Albany Street on the shipping tickets of the Railway Express Agency and were receipted for in the name of 5. M. Goldberg & Co., by Josephine Paronich and were received by the defendant Goldberg personally. Goldberg personally telephoned Skinner and told them to change the address on goods shipped from 101 Albany Street to 72 Harrison Avenue. The subsequent shipments on December 4, December 28 and December 29 were directed to S. M. Goldberg and to S. M. Goldberg care of Maxwell Shapiro, 72 Harrison Avenue and were receipted for in the name of “M. Shapiro — Joe Costa” and “M. Shapiro- — Sid Goldberg.” Maxwell Shapiro did business personally with the defendant Goldberg and Goldberg had instructed the defendant Paronich to deliver the cartons in the first shipment received November 24 to Shapiro and also all other goods to Shapiro. A letter was sent to the United States Post Office by Sidney M. Goldberg dated December 27, 1945 with an address at 9 Knapp Street requesting that all of plaintiff’s mail be forwarded to the defendant Goldberg. These shipments made up a total of 4,695% yards of linings. The goods shipped were as to color, matching samples and quantities in accordance with the goods ordered by the plaintiff from Skinner on October 11,1945. The invoices for these .shipments all referred to the order No. 8281 and were directed to Sidney M. Goldberg & Co., 101 Albany Street. The invoices dated December 3, December 27 and December 28 have notation on the bottom “Ship to Sidney M. Goldberg, 72 Harrison Ave., Boston 11, Mass.” All the invoices *103 were taken by Goldberg and he personally paid Skinner $1,480.10 the amount of the invoices less discount.
During the time from October 4, 1945 until after the defendant severed his connection with the plaintiff corporation on January 4, 1946 the defendant Goldberg concealed from Rich, treasurer of the plaintiff corporation, the fact that he had received these shipments although Rich often inquired of him about the shipments and Goldberg led Rich to believe that there had been a delay in filling the order and that the goods would be delivered later and it was not until after January 4, 1946, after Rich had received a telephone call from the Boston branch manager of Skinner asking if he had received a bill from Skinner and Rich told him that no goods had been received and asking when the goods would be delivered, to which the manager said he had no information and to talk with Goldberg, that Rich went to 72 Harrison Avenue to see Goldberg and saw there two cartons resembling the cartons of Skinner. Even at that time Goldberg told Rich that delivery of the goods ordered by the plaintiff was promised daily and he should continue his efforts to obtain the same.
The Boston manager of Skinner testified that the order of the plaintiff dated October 11, 1945 was shipped by Skinner and that “we had fulfilled every obligation” and that he the Boston manager of Skinner had told Goldberg that Rich said the goods had been diverted and Goldberg did not deny it.
Neither the plaintiff nor defendant Goldberg was able to obtain any free linings from Skinner except the 4,695% yards of lining which Goldberg took and Goldberg had no priority to obtain the goods he took under order No. 8281. The plaintiff never received any of the linings under the order to Skinner nor were any payments made by the plaintiff to Skinner.
*104 The plaintiff needed the linings in order to continue to manufacture coats and was compelled to shut down January 15, 1946 for lack of these materials. The plaintiff used on an average of 1-5/8 yards of lining in each coat and the profit on each coat was approximately $2.00. The plaintiff corporation and Rich at no time prior to the conversation with the Boston representative of Skinner had any knowledge that Goldberg had received any lining goods from Skinner or other linings under plaintiff’s order No. 8281.
The defendant Goldberg seasonably filed 17 requests for rulings and claims to be aggrieved by the denial of the following requests:
1. On all the evidence the finding should be for the defendant. 3. There is not sufficient evidence to warrant a finding for the plaintiff. 6. There is no evidence of any selection or segregation of any goods by anyone to apply such goods to the plaintiff’s order placed with William E. Skinner & Co. in October, 1945. 7. There is no evidence of any title, or right to possession in the plaintiff, to any goods claimed by the plaintiff to have been converted. 11. There is no evidence of the exercise of any dominion by the defendant over any goods claimed by the plaintiff to have been converted. 17. The rule of damages in an action for conversion, where the goods allegedly converted are merchantable goods, is the fair market value of such goods.
The defendant Goldberg also claims to be aggrieved by the rulings upon the following requests:
“4. There is no evidence of any acceptance or receipt by the plaintiff of any goods claimed by the plaintiff to have been converted.”
Ruling: “There is evidence of a legal acceptance.”
*105 “10. In the absence of a tortious taking by the defendant, an action for conversion cannot be maintained without proof of a demand by the plaintiff for the return of the goods allegedly converted and a refusal to do so by the defendant.”
Ruling: “I find there was a tortious taking by the defendant, S. M. Goldberg.”
From the evidence it could be found that the plaintiff and not the defendant Goldberg had a priority to purchase the goods in question, that an order in accordance with the priority was placed with Skinner, that Skinner accepted the order from the plaintiff and shipped the goods to the plaintiff, and that after some of the goods were delivered at the plaintiff’s place of business the goods were re-shipped at the defendant Goldberg’s direction to another address for his own use, that the rest of the goods were shipped at the defendant Goldberg’s direction to Skinner to the address on Harrison Ave. and that all of the goods were appropriated by the defendant Goldberg to his own use, knowing they were intended for the use of the plaintiff.
These facts would support a finding of conversion on the part of the defendant Goldberg. There was no error in denying requests numbered 1 and 3. -
There was evidence that the goods were picked out and shipped by Skinner in accordance with the plaintiff’s order to Skinner and Skinner’s Boston agent in effect stated that the order had been filled. Request No. 6 was properly denied.
There was sufficient evidence of title or right to possession in the plaintiff. Some of the shipments were delivered at plaintiff’s place of business and were receipted for by plaintiff’s employees. The defendant Goldberg could not rightfully receive the deliveries as an officer of the plaintiff corporation and then divert the goods for his own use, nor direct the shipper to send the goods to him personally at another address. Ordinarily delivery to a carrier *106 by a shipper is sufficient to pass title to the consignee. G. L. (Ter. Ed.) chap. 106, sec. 21, Rule 4 (1) & (2) See American Garment Co. v. Taylor, 308 Mass. 527.
Request No. 7 was rightly denied.
Nor was there any error in finding that there was evidence of a legal acceptance in the ruling upon request No. 4 nor that there was a tortious taking by the defendant Goldberg upon request No. 10.
The defendant Goldberg seems to contend that his conversation with' Hughes, who was connected with Skinner, relative to obtaining linings, the notation on the order “Allotted by H. H. to Mr. Goldberg, Oct. 10th” and the fact that the invoices were addressed to S. M. Goldberg & iCo., is conclusive evidence that the goods were not shipped to the plaintiff but to him personally. It would be evidence that might be so determined but it is not conclusive of those facts. In view of the other evidence it would seem to be at least equally consistent with a general plan and method of the defendant Goldberg to divert the goods to his own personal use.
Request No. 17 was properly denied. As a general rule the damages in an action of conversion are measured by the sum necessary to compensate the owner, or person having the right to possession, for all actual losses sustained as a natural and proximate result of the conversion. Jackson v. Innes, 231 Mass. 558; Glaspy v. Cabot, 135 Mass. 435; Chamberlin v. Shaw, 18 Pick. 278.
Usually the value of the property converted with interest from the time of conversion is a fair measure of the damages sustained. Lorain Steel Co. v. Norfolk &c. Street Ry., 187 Mass. 500, 506; Hart v. Brierley, 189 Mass. 598; E. Kronman, Inc. v. Burns Bros. Inc., 265 Mass. 549.
There however may be special damages for interruption of business. Whitcomb v. Reed-Prentice Co., 262 Mass. 348, 359; Potier v. A. W. Perry, Inc., 286 Mass. 602, 606.
*107 In the instant case while there was a sale value of the goods they could not be purchased in the open market without a priority. The plaintiff was unable to obtain other linings and had to close down its business because of lack of the goods. While anticipated profits are not recoverable as such, profits ordinarily made in a business may be evidence of the loss sustained by the interruption of the business, Weston v. Boston & Maine R. R., 190 Mass. 298, 300; See C. W. Runt Co. v. Boston Elevated Railway, 199 Mass. 220, 235.
The damages as determined by the court were not too remote or uncertain. Report dismissed.